**United States District Court**
For the Northern District of California

**E-FILED on**   1/29/10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ECLECTIC PROPERTIES EAST, LLC, a California Limited Liability Company, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE MARCUS & MILLICHAP COMPANY, a California corporation, et al., <br><br> Defendants. | No. C-09-0511 RMW <br><br><br> ORDER <br><br><br> **[Re Docket Nos. 53, 55, 58, 64, 68, 219 and 227]** |

On January 22, 2010, the court heard seven motions in this case: (1) a motion to dismiss by defendants The Marcus & Millichap Company, Sovereign Investment Company, Sovereign Scranton, LLC, Sovereign CC, LLC, and Sovereign JF LLC (collectively, the "Sovereign Defendants"), which was joined by defendants Marcus & Millichap Real Estate Investment Services Inc., Marcus & Millichap Real Estate Investment Brokerage Company, Marcus Muirhead, Sean Perkin, Donald Emas, Andrew Lesher, Stewart Weston, Brice Head, and Bret King (collectively, the "Broker Defendants"); (2) a motion to dismiss by the Broker Defendants, which was joined by defendants Glen Kunofksy and Daisy Gomez; (3) a motion to dismiss by real estate appraiser defendant PGP Valuation, Inc.; (4) a motion to dismiss, sever or transfer by defendants Paul Morabito and Baruk Management, Inc., which was joined by defendants Tibarom NY, LLC, and Tibarom PA, LLC; (5) a motion by plaintiffs to compel the deposition of defendant Morabito on

ORDER—No. C-09-0511 RMW
TER

jurisdictional issues; (6) defendant Morabito's motion for a protective order to preclude the taking of his deposition; and (7) a motion to strike plaintiffs' jury demand by the Sovereign Defendants. All motions are opposed. Having considered the papers submitted by the parties and the arguments of counsel at the hearing, and for good cause appearing for the reasons set forth below and stated at the hearing, the motions to dismiss are granted with leave to amend, the motion to compel defendant Morabito's deposition is denied, the motion for a protective order is granted, and the motion to strike plaintiffs' jury demand is denied without prejudice.[1]

       This is a complex real estate investment fraud case where the complexity arises largely because of the number of plaintiffs, defendants, and transactions with little obvious connection to each other. Twenty-six plaintiffs filed suit against thirty-one defendants relating to twenty-two commercial real estate 1031 exchanges into commercial properties with long-term triple net leases. Fourteen of the properties involved Jiffy Lube franchises, eight of the properties involved Church's Chicken franchises. None of the properties are located in California. Instead, the properties are located in New York, Florida, Pennsylvania and Georgia. The complaint breaks out seventeen groups of transactions, each involving a separate individual or couple who purchased the property (and sometimes two or three properties), and generally separate groups of defendants. The defendants include real estate investment firms (including parent corporations with no direct involvement in the complained of transactions), subsidiaries, individual employees, real estate brokers and agents, an appraiser, tenants and the tenants' corporate owners. The complaint is long – 174 pages, 624 paragraphs – and seeks to assert seven causes of action:

1. RICO (18 U.S.C. §1962(c)-(d));
2. Negligent Misrepresentation;
3. Fraudulent Concealment under California Civil Code §1710;
4. Unjust enrichment and imposition of a constructive trust;
5. Money had and received;
6. Violation of California Business and Professions Code Section 17500; and,

---

[1] Additionally, the Sovereign defendants' request for judicial notice (Docket 62) is denied without prejudice; the Morabito defendants' motion to strike plaintiffs' opposition (Docket 144) is denied.

ORDER—No. C-09-0511 RMW
TER          2

7. Violation of California Business and Professions Code Section 17200.

The court's subject matter jurisdiction is based solely on the RICO claim.

The overarching theory is that each plaintiff was defrauded into investing in a commercial property which was subject to a long-term triple net lease. The "scheme," as described by plaintiffs, took place in three stages: first, defendant Morabito or Waelti (or one of their respective companies) sold a commercial property to an entity (generally, one of the Sovereign defendants) at an inflated price and immediately entered into a leaseback transaction, with the lease payments set significantly higher than fair rental value. These long-term, high rent, triple net, leases made each property appear to be worth significantly more than its true market value. Second, the Sovereign entity then marketed the properties for sale (through the Broker defendants) to real estate investors, such as plaintiffs, using allegedly sham appraisals to support the artificially high values. Third, after a plaintiff's purchase, the underlying tenant walked away from the lease, causing the value of the property to plummet.[2] Through this scheme, each plaintiff was allegedly defrauded into paying significantly more than the property was actually worth, based on misrepresentations regarding the underlying leases and tenants.

But, while the complaint repeatedly alleges that each purported "scam" was executed "with mathematical precision," the facts that are pleaded show significant differences between the transactions, including the amount of the purported price inflation, the amount of time between the inflated sales price and the ultimate sale to a plaintiff during which the tenant is alleged to have paid artificially high rent under the "sham" lease (as long as 19 months), the amount of time after that passed after a plaintiff acquired the property and the abandonment of the lease by the tenant

---

[2] The alleged scheme did not always follow this pattern, however. In the case of plaintiffs Gagnon and Call, each purchased directly from either a Morabito-related entity or a Waelti-related entity. Additionally, in five of the transactions, the first "inflated" sale is alleged to have been for the same price that was paid by the Morabito or Waelti-related entity when acquiring the property. *See* the transactions involving Cheatham (Complaint at 122), Danus (Complaint, p. 127); Engelberg (Complaint at 142); and Armenta (Complaint at 149) and the third purchase by Hom (Complaint at 115). In a sixth transaction, the inflated price is only $600 higher than the original price. *See* Amirkas purchase (Complaint at 104). Moreover, the length of time in which the allegedly inflated lease was in place before the tenant walked away varied tremendously, ranging from six months to four years.

ORDER—No. C-09-0511 RMW
TER 3

1  (generally measured in years). A plain reading of the seventeen narratives alleged in the complaint
2  does not give rise to a plausible inference of a single fraudulent scheme executed with precision.

3  Each of the motions to dismiss challenges the adequacy of the RICO allegations. The court
4  agrees that the complaint does not adequately plead the RICO claim with adequate particularity.
5  The fundamental difficulty with the complaint is that it fails to allege facts sufficient to put each
6  defendant on notice of what it is that he, she or it is alleged to have done that gives rise to the claims
7  asserted against him, her, or it. While long and colorful, the complaint nevertheless fails to
8  adequately plead *facts* sufficient to inform each defendant of the specific allegations against it under
9  each asserted cause of action, and many of the allegations simply lump all of the defendants together
10 in a group. The complaint does not adequately allege the misrepresentations and omissions that
11 form the foundation of the fraud and knowledge of falsity by the defendants who are alleged to have
12 made them. The complaint similarly does not allege facts which plausibly suggest each defendant's
13 knowledge of the alleged fraudulent scheme. For example, the complaint is silent with regard to the
14 individual broker's knowledge that the offered sales price was artificially inflated, that the
15 underlying lease which purportedly supported the sale price was a sham, or that the tenant intended
16 to walk away from the underlying lease after a plaintiff purchased the property.

17 RICO makes it unlawful for any person employed by or associated with any enterprise to
18 conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a
19 pattern of racketeering activity. 18 U.S.C. §1962(c). "To state a claim under § 1962(c), a plaintiff
20 must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"
21 *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2006) (quoting *Sedima S.P.R.L. v. Imrex Co.*,
22 473 U.S. 479, 496 (1985)). These requirements must be established as to each individual defendant.
23 *Craig Outdoor Advertising Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008).
24 Plaintiffs have not done so.

25 First, plaintiffs simply have failed to plead RICO with the requisite degree of particularity.
26 Section X of the Complaint, ¶¶ 534-572, sets forth only conclusory boilerplate RICO allegations,
27 with little factual specificity to establish the RICO enterprise, or each defendant's conduct in relation
28

ORDER—No. C-09-0511 RMW
TER                                     4

to the enterprise, the pattern of racketeering activity, and the predicate acts of mail fraud and wire fraud. For example, with regard to the "pattern of racketeering activity," Paragraph 550 alleges:

> Defendants conducted the affairs of the M&M Enterprise by a "pattern of racketeering activity," as defined by 18 U.S.C. §1961(5), by committing or aiding and abetting in the commission of at least two acts of racketeering activity, *i.e.*, indictable violations of 18 U.S.C. §§1341 and 1343 as described above, within the past 10 years. In fact, Defendants have committed or aided and abetted in the commission of hundreds of acts of racketeering activity. Each racketeering act was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results and impacted similar victims, including the Plaintiffs.

Similarly, with regard to the predicate acts, Paragraph 553 alleges:

> For the purpose of executing and/or attempting to execute the above-described fraudulent scheme, Defendants, in violation of 18 U.S.C. § 1341 (mail fraud), placed in post offices and/or in authorized repositories, matter and things to be sent or delivered by the U.S. Postal Service, caused matters and things to be delivered by commercial interstate carriers, and received matter and things from the U.S. Postal Service and/or commercial interstate carriers, including, but not limited to, marketing and sale materials, financial information, correspondence, contract, sales and lending documents, escrow and title documents, and other materials relating to the properties sold to Plaintiffs.

These allegations are not pleaded with sufficient factual particularity. *Lancaster Community Hospital v. Antelope Valley Hospital Dist.*, 940 F.2d 397, 405 (9th Cir.1 991).

The complaint does not adequately allege facts showing that each defendant conducted the enterprise through a pattern of racketeering activity, in particular lacking facts for the individual broker defendants who are alleged to have been involved in only one transaction, or a couple of transactions within a relatively short amount of time. *Craig Outdoor Advertising Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008). The complaint also does not adequately allege facts that each defendant who plaintiffs seek to hold liable under RICO acted with a common purpose. *Odom v. Microsoft Corp.*, 486 F.3d 541, 549 (9th Cir. 2005). The "common purpose" allegations, for example, allege only that:

> 537. Defendants have engaged in a common course of conduct and conspiracy with the common purpose of defrauding Plaintiffs into purchasing the Properties at artificially inflated prices. To achieve their common purpose, Defendants have associated-in-fact as an ongoing "enterprise" within the meaning of 18 U.S.C. §1961(4).
>
> 567. The objects of the conspiracy were, and are: (a) to sell the Properties and other real property at artificially inflated prices; (b) to maximize sales for Defendants; and (c) to defraud Plaintiffs and other members of the public.

No facts are alleged to show a common purpose. Similarly, the complaint does not allege facts demonstrating that each defendant conducted or participated in the conduct of the enterprise's affairs, *i.e.* participated in the operation or management of the enterprise itself. *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993); *Walter v. Drayson*, 538 F.3d 1244, 1247-48 (9th Cir. 2008). Additionally, the complaint does not adequately allege that each defendant proximately caused plaintiff's damages. *Oki Semiconductor v. Wells Fargo Bank*, 298 F.3d 768, 774. The allegations are insufficient.

There are other pleading deficiencies as well. Plaintiffs seek to impose liability on several defendants through an alter ego theory, but the alter ego allegations are insufficient. No facts – as opposed to conclusory assertions – have been pleaded to support the alter ego theory. For example, Paragraph 53 alleges:

> At all times alleged herein, M&M owned, managed, maintained, and controlled the activities of its agents M&M Investment and Sovereign Investment, as well as those entities' subsidiaries and affiliates. Therefore, the activities, acts, and omissions of M&M Investment and Sovereign Investment were and are, in reality, the activities, acts, and omissions of M&M. Accordingly, M&M is fully responsible and liable for the wrongdoing of its agents as alleged in this complaint.

Similarly, paragraph 69 alleges:

> At all relevant times, Waelti controlled and dominated the affairs of QSR, QSR One, and QSR II, directed the business and financial activities of those entities, used assets of the corporate entities for his personal use, and caused assets of those entities to be transferred to him personally without adequate consideration as well as to other business entities which he controlled. At all relevant times, each of those entities were a mere shell, instrumentality and conduit through which Waelti carried on his business, including his participation as a co-conspirator in Defendants; scheme.

Additionally, various entities are also alleged to be "at all relevant times, controlled by, and the alter-ego of, Morabito" and the QSR entities are alleged to have been "at all relevant times, controlled by, and the alter-ego of, Waelti." ¶¶ 55-63 (Morabito), ¶¶ 66-68 (Waelti). Conclusory allegations of "alter ego" statues are not sufficient. *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003). If plaintiffs seek to hold any defendant liable under an alter ego theory, plaintiffs must allege facts from which a plausible inference could be drawn that a defendant is the alter ego of another.

ORDER—No. C-09-0511 RMW
TER                              6

The same pleading defect – lack of factual specificity – also undermines each of the other asserted claims, all of which rely on the same underlying allegedly fraudulent conduct. Rule 9(b) requires more.

Accordingly, the motions to dismiss for failure to plead the asserted claims with the required level of specificity are granted, with leave to amend.

Turning to defendant Morabito's motion to dismiss for lack of personal jurisdiction, the motion is denied without prejudice. As became clear at the hearing, if plaintiffs are successful in pleading a claim under RICO, there will be personal jurisdiction over Morabito pursuant to the nationwide reach of Section 1965(b). On the other hand, if plaintiffs are not successful in pleading a claim under RICO, then there is no basis for the court to exercise subject matter jurisdiction, and the question of personal jurisdiction over Morabito does not arise. Because the court has dismissed the RICO claim, albeit with leave to amend, there is no present need to address the issue of personal jurisdiction over defendant Morabito. For the same reason, there is also no reason to require Morabito to appear for a deposition to be conducted on personal jurisdiction issues. Thus, Morabito's motion for a protective order is granted and plaintiffs' motion to compel the deposition is denied.

The Sovereign defendants' motion to strike plaintiffs' jury demand is denied without prejudice, as are the alternative motions to sever or transfer venue. For the reasons stated at the hearing, and as a matter of case management, the court prefers to take up the issues regarding jury waiver, venue, severance, and the like only after the factual basis for plaintiffs' claims and defendants' liability is pleaded with the requisite degree of specificity.

Accordingly, for the foregoing reasons, the motions to dismiss the complaint are granted in part. Plaintiffs shall have twenty days' leave in which to file and serve an amended complaint. Plaintiffs' motion to compel the deposition of defendant Morabito is denied; defendant Morabito's motion for a protective order is granted for the reasons stated herein. The Sovereign defendants' motion to strike the jury demand is denied without prejudice.

DATED:     1/29/10

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

ORDER—No. C-09-0511 RMW
TER          7

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs**:

| | |
|---|---|
| Bonny E. Sweeney | bonnys@csgrr.com |
| James L. Davidson | jdavidson@csgrr.com |
| Phong L. Tran | ptran@csgrr.com |
| Stuart Andrew Davidson | sdavidson@csgrr.com |
| Baile L. Heikkinen | bheikkinen@csgrr.com |
| Cullin Avram O'Brien | cobrien@csgrr.com |
| John Granville Crabtree | jcrabtree@crabtreelaw.com |
| Mary B. Clark | mclark@csgrr.com |

**Counsel for Defendants The Marcus & Millichap Company**, **Sovereign Investment Company**, **Sovereign Scranton LLC**, **Sovereign CC, LLC**, **and Sovereign JF, LLC**

| | |
|---|---|
| John W. Keker | jwk@kvn.com |
| Daniel E. Jackson | djackson@kvn.com |
| Daniel Edward Purcell | dpurcell@kvn.com |

**Counsel for Defendants Marcus & Millichap Real Estate Investment Services Inc., Marcus & Millichap Real Estate Investment Brokerage Company, Marcus Muirhead, Sean Perkin, Donald Emas, Andrew Lesher, Stewart Weston, Brice Head and Bret King**

| | |
|---|---|
| David Charles Scheper | dscheper@obsklaw.com |
| Katherine B. Farkas | kfarkas@scheperkim.com |

**Counsel for Defendants Paul A. Morabito and Baruk Management, Inc.**

| | |
|---|---|
| Eric Joseph Schindler | es@mslawllp.com |
| Robert John McKennon | rm@mslawllp.com |

**Counsel for Defendants Tibarom NY LLC and Tibarom PA LLC**
Timothy Alan Horton     thorton@mckennalong.com

**Counsel for Defendant PGP Valuation, Inc.**
Michael Lloyd Smith     mls@mmker.com

**Counsel for Defendants Glen D. Kunofsky and Daisy Gomez**
Eugene Ashley     eashley@hopkinscarley.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   1/29/10                                   TER
                                                        **Chambers of Judge Whyte**

ORDER—No. C-09-0511 RMW
TER                                    8